# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche Manning | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 98 C 6307 | **DATE** | 11/30/2000 |
| **CASE TITLE** | Elliott, et al. vs. CHA, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. Plaintiffs' motion to enforce subpoena and compel the Chicago Department of Public Health to produce documents is granted. The parties are directed to draft and present a protective order controlling the public disclosure and use of the tenants' names and blood lead levels.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | 176 |
| | Notified counsel by telephone. | DEC 01 2000 date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. Manning | | |
| JD | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

FILED FOR DOCKETING
00 NOV 30 PM 5: 17

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FAYE MARIE ELLIOTT, individually and as mother of Amanda Lisa Marie Elliott, Edward Elliott and David Boss, all minors, and PAMELA HALL, individually and as mother of Cecile Hall and Ieshia Hall, minors, MARY HALL, HELEN GREENLEE, individually and as mother of Brandon Greenlee, a minor, on behalf of themselves and all others similarly situated, ) | |
| Plaintiffs, ) | No. 98 C 6307 |
| ) | Hon. Blanche M. Manning |
| v. ) | Magistrate Nan R. Nolan |
| CHICAGO HOUSING AUTHORITY, CHAC, INC., QUADEL CONSULTING CORPORATION, INC., a foreign corporation, and LUCIUS L. HOUSE, an individual, ) | DOCKETED |
| Defendants. ) | DEC 0 1 2000 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs bring this class action against the Chicago Housing Authority ("CHA") and others on behalf of Section 8 residents allegedly suffering from lead-based paint exposure. This matter is before the Court on Plaintiffs' Motion to Enforce Subpoena and Compel the Chicago Department of Public Health ("CDPH") to Produce Documents. For the reasons explained below, Plaintiffs' Motion is GRANTED.

## I. BACKGROUND

The Illinois Lead Poisoning Prevention Act ("LPPA") requires all physicians and health care facilities to screen all children 6 months to 6 years of age who live in an area defined as high risk for lead poisoning. 410 ILCS 45/6.2. If a blood test reveals a blood lead level in excess of permissible

176

limits, the LPPA requires that the physician who diagnosed the lead poisoning or a nurse, hospital administrator or public health officer who has verified information of the lead poisoning report the name of the person and the laboratory results, among other things, to the Illinois Department of Public Health ("IDPH"). 410 ILCS 45/7. The LPPA also provides that after notification that an occupant of a dwelling unit has a blood lead level in excess of permissible limits, a representative of the IDPH may inspect the dwelling for the purposes of ascertaining that all surfaces accessible to children are intact and in good repair and ascertaining the existence of lead bearing substances. 410 ILCS 45/8. Following the inspection, the IDPH prepares an inspection report. Id. The IDPH has delegated to the City of Chicago (the "City") responsibility for carrying out the provisions of the LPPA.

Plaintiffs served a subpoena on the CDPH seeking production of complete inspection files for 1,000 residential addresses located in Chicago, Illinois. The addresses were taken from Defendant CHAC's list of 8,450 Section 8 families with children under the age of six. Plaintiffs seek information concerning a sampling of these homes to determine if the CDPH conducted inspections and if so, whether the inspections revealed lead-based paint hazards which Defendants failed to investigate. The City, which is not a defendant in this action, responded to the subpoena and agreed to produce the inspection files with the names and blood lead levels of residents redacted. Plaintiffs declined the City's offer to produce redacted documents and filed the present motion. The CHA and the City resist producing the names and blood lead levels of the Section 8 residents on the grounds that such information is protected from disclosure by a privilege established by the LPPA's reference to the Illinois Medical Studies Act ("MSA"), the Illinois physician-patient privilege, and the Illinois Constitution's provision of a right of privacy.

## II. DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) provides that parties may discover any matter not privileged which is relevant to the subject matter involved in the pending action. Rule 501 of the Federal Rules of Evidence governs the applicability of privileges in federal courts. Federal common law applies in cases based upon a federal cause of action even where the complaint states a pendent state law claim. Fed. R. Evid. 501; Memorial Hospital for McHenry County v. Shadur, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981). The principal claims in this case arise under 42 U.S.C. § 1983, the United States Housing Act, and the Lead-Based Paint Poisoning Prevention Act, which are all federal statutes. Thus, federal common law governs the privilege determination.

"This does not mean, however, that federal courts should not consider the law of the state in which the case arises in determining whether a privilege should be recognized as a matter of federal law." Shadur, 644 F.2d at 1061. Where the principal claim is a federal claim, the federal court has discretion regarding whether a state law privilege applies. Id. Two principles govern this determination. "First, because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed." Id; Jaffe v. Redmond, 518 U.S. 1, 9 (1996) (noting there is a "general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional . . . ."). Second, in assessing whether the privilege asserted should be recognized, the federal court "should weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privileged, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." Shadur, 644 F.2d at 1061-62. The analysis of whether a privilege should be added to the federal common law

should be made on a case-by-case basis considering the private and public interests served by the privilege as well as the evidentiary benefit that would result if the privilege were rejected. Jaffe, 518 U.S. at 8, 11. The party asserting the privilege has the burden of demonstrating its existence and applicability to the case. Abbott v. Kidder, Peabody & Co., 1997 WL 337228, *4 (N.D. Ill. 1997).

A. **Illinois' Medical Studies Act**

The MSA provides that assessments of a health care practitioner's professional competence used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation shall be treated as "privileged" and "strictly confidential." 735 ILCS 5/8-2101. The LPPA provides that reports required thereunder "shall be treated in the same manner as information subject to the provisions" of the MSA. 410 ILCS 45/7. The federal common law of privileges does not include a privilege for hospital peer review committees. Thus, the Court must determine whether to expand the federal common law of privileges to include the asserted state law privilege.

In Shadur, the Seventh Circuit considered the applicability of the MSA privilege. Shadur involved an allegation that a group of competing physicians violated federal and state antitrust laws by repeatedly denying the plaintiff physician hospital staff privileges and thereby destroying his practice. The Seventh Circuit found that although the policy behind the MSA was substantial, the need for full disclosure of relevant evidence to the trier of fact was particularly substantial because the plaintiff sought to vindicate not only his interest but also the "strong public interest in open and fair competition." Shadur, 664 F.2d at 1062. The Shadur court held that the need for truth outweighed the policies sought to be furthered by the MSA because the public interest in enforcement of antitrust law "was simply too strong to permit the exclusion of relevant and possibly

crucial evidence by application of the Hospital's privilege." Id. at 1063.

The Court similarly declines to apply the MSA privilege to prevent disclosure of the tenants' names and blood lead levels to class counsel in the instant case. Plaintiffs bring this class action pursuant to the federal Lead Based Paint Poisoning Prevention Act. Plaintiffs' complaint alleges that Defendants violated "the federal lead-based paint statutes and regulations for Section 8 housing by failing to inspect for lead paint and defective paint, to enforce lead paint abatement in Section 8 Program properties, and to notify Section 8 tenants of potential lead-based paint at Section 8 Program properties, thereby causing lead-based paint poisoning and potential lead-based paint poisoning in tenants of Section 8 housing." Fourth Am. Class Cmplt. ¶¶ 2, 65. The LBPPA was designed "to eliminate childhood lead based paint poisoning by screening, and testing young children for high blood levels," and "to determine the most effective means for removing the hazards of lead poisoning in those residences that present a high risk to the health of young children." Davis v. Philadelphia Housing Authority, 121 F.3d 92, 99 (3rd Cir. 1997). These purposes are consistent with the requirements of the Illinois Lead Poisoning Prevention Act. Both statutes seek to screen children for lead poisoning and to remove the hazards of lead poisoning in residences. Thus, the purposes of the Illinois Lead Poisoning Prevention Act will be furthered by disclosure of the full inspection reports to class counsel and private enforcement of the federal LBPPA.

In addition, the information sought by the Plaintiffs is highly relevant and may greatly impact their ability to prove their claim that Defendants engaged in a policy, custom, or practice of noncompliance with lead-based paint Housing Quality Standards ("HQS"). A comparison of the CDPH's inspection records with Defendants' inspection records may reveal the existence of a policy, custom or practice of noncompliance with the lead-based paint HQS for the class members if a

substantial portion of the Section 8 apartment passed HQS inspections but did not pass CDPH lead-based paint hazard inspections. Plaintiffs explain that they need the residents' names in addition to the addresses because the CDPH inspection records often indicate only the floor on which the apartment is located, rather than the unit number. Neither the City nor the CHA dispute that the CDPH's records often fail to sufficiently identify the apartments inspected. A comparison of the tenants names is the most direct and efficient method of determining whether the apartments inspected by the CDPH were enrolled in the Section 8 program.

The residents' blood lead levels are also relevant to Plaintiffs' claims. Plaintiffs assert, among other things, that Defendants violated the lead-based paint HQS by failing to conduct chewable surface examinations of Section 8 apartments where a child with an elevated blood lead level resides. Thus, whether a child enrolled in the Section 8 program had an elevated blood lead level when the CDPH inspected an apartment may be relevant to the determination of whether Defendants had a policy, custom or practice of failing to comply with the applicable regulations.

Finally, recognition of the MSA privilege in this case would not protect or further the policies of that Act. The policy behind the MSA privilege is "to bolster the effectiveness of in-hospital peer group review committees." Shadur, 664 F.2d at 1062. The MSA is based on the premise that "absent the statutory peer review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluation of their colleagues." Jenkins v. Wu, 468 N.E.2d 1162, 1168 (Ill. 1984). While the policy behind the MSA privilege may be "substantial" in the appropriate context, the interest in the confidentiality of peer review proceedings is not implicated here.

## B. Illinois' Physician-Patient Privilege

Federal common law does not recognize a physician-patient privilege. Patterson v. Caterpillar 70 F.3d 503, 506-07 (7th Cir. 1995). The Court refuses to extend federal common law to include a physician-patient privilege which prohibits the disclosure of the tenants' names and blood lead levels to their own counsel. Recognizing the physician-patient privilege would unnecessarily interfere with enforcement of the LBPPA on behalf of the persons whose records the CHA and the City seek to protect from disclosure.

Illinois' statutory physician-patient privilege provides in relevant part:

> No physician, surgeon, psychologist, nurse, mental health worker, therapist, or other healing art practitioner shall be permitted to disclose any information he or she may have acquired in attending any patient . . . except only . . . in all actions brought by the patient, his or her personal representative . . . wherein the patient's physical or mental condition is an issue.

735 ILCS 5/8-802. The physician-patient privilege is designed to "encourage a free disclosure between the physician and the patient, and to protect the patient from the embarrassment and invasion of privacy that disclosure would entail." People v. Herbert, 438 N.E.2d 1255, 1259 (Ill.App. 1982). Illinois case law holds that the identity of patients is not privileged. House v. Swedish-American Hosp., 564 N.E.2d 922, 927 (Ill. App. 1990); Geisberger v. Willuhn, 390 N.E.2d 945, 946-947 (Ill. App. 1979). Thus, the physician-patient privilege does not preclude disclosure of the tenants' names.

Moreover, this case is brought as a class action on behalf of minors in the Section 8 program. There is no compelling interest in protecting the tenants' names and blood lead levels from their own class counsel. Class counsel will not publicly disclose this information. It is difficult to imagine how the class members will be harmed by disclosure of their names and blood lead levels to their

own counsel. The class seeks to enforce standards which require the identification and mitigation of lead hazards. If Plaintiffs are successful in proving their claims, class members will benefit and vindicate the strong public interest in addressing the danger presented to children from exposure to lead-based paint.

C. **Illinois Constitution's Right of Privacy**

The CHA also argues that the Illinois Constitution's provision of a right of privacy protects the tenants' names and blood lead levels from disclosure. The CHA has not met its burden of demonstrating that a privilege grounded in the Illinois Constitution's guarantee of privacy prevents disclosure under the facts of this case. The primary case relied on by the CHA is easily distinguishable. In re: Minor, 595 N.E.2d 1052 (Ill. 1992), involved two minor children who were victims of physical and sexual abuse by a parent. A newspaper reporter learned of the minors' identities while attending a court hearing and the newspaper sought to disclose the names of the minor children by publishing them in the newspaper. The Illinois Supreme Court held that section 1-5(6) of the Juvenile Court Act did not grant the newspaper the right to disclose the names of the juveniles obtained at the court hearing. The court found that the minor victims had a compelling privacy interest at stake in the case:

> The minor victims in this case have done nothing to limit or diminish their constitutional right to be free from governmental and nongovernmental invasions of their privacy. They are not juvenile delinquents. They are not participating in the juvenile proceedings begun on their behalf through their own free will. They were victims of abuse by a parent. They were thrust into the juvenile system by actions of third parties, not by their own actions. Under these facts, we find that the minor victims have a compelling interest in their right to be free from invasions of their privacy. Public disclosure of their identities would surely invade their right to privacy in a most egregious manner.

Id. at 1056. The Minor court noted that the minor victims resided in a small community and public

disclosure of their identity could cause "continuing emotional trauma" and "impede the length and difficult healing process which they must endure." Id. In sharp contrast, class counsel will not publicly disclose the tenants' names and blood lead levels, and the CHA has not identified how class members will be harmed by class counsel learning their identities and blood lead levels.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Enforce Subpoena and Compel the Chicago Department of Public Health to Produce Documents is GRANTED. The parties are directed to draft and present a protective order controlling the public disclosure and use of the tenants' names and blood lead levels.

ENTER:

*Nan R. Nolan*

Nan R. Nolan
United States Magistrate Judge

Dated: 11/29/2000